IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| TRILOGY DEVELOPMENT COMPANY, | ) | |
| | ) | Case No. 09-42219-DRD |
| Debtor. | ) | Chapter 11 |
| _____ | ) | |
| | ) | |
| TRILOGY DEVELOPMENT COMPANY, LLC, | ) | Adversary No. 10-4016-DRD |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BB SYNDICATION SERVICES, INC., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

This adversary proceeding comes before the Court on the Motion for Partial Summary Judgment ("Motion") filed by plaintiff Trilogy Development Company, LLC ("Debtor" or "Trilogy") against defendant J.E. Dunn ("Defendant" or "Dunn"). Trilogy seeks judgment as a matter of law that Dunn does not have a valid mechanic's lien against property of the bankruptcy estate and that the claim of Dunn against the estate is unsecured. This is a core proceeding under 28 U.S.C. §157(b)(2)(K) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a) and (b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, the Court finds that Trilogy is not entitled to a judgment as a matter of law against Dunn.

### **I. FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are uncontroverted: Trilogy is a real estate development company

that owns and developed a site for construction of a hotel, office building and parking garage (the "Project"). On December 5, 2005, Trilogy and Dunn entered into a contract (the "Contract") providing for improvement of the real estate and construction on the Project began soon thereafter. The contract was drafted by Trilogy's counsel. Dunn did not provide a separate notice to Trilogy regarding mechanics' liens that contained the specific language and requirements as set forth in Mo. Rev. Stat. § 429.012.1[1]. However, the Contract contained three separate provisions, specifically Sections 9.2.3, 9.4.4 and 9.4.5, which Dunn asserts satisfy the notice requirements of § 429.012.1. On February 3, 2009, Dunn filed a mechanic's lien, as amended on March 9, 2009, in the Circuit Court of Jackson County, Missouri in the amount of $12,445,963.46, not including penalties, interest and costs. *See* Trilogy's Suggestions in Support of Plaintiff's Motion for Partial Summary Judgment, ¶¶ 2-7; Memorandum of J.E. Dunn Construction Company in Opposition to Plaintiff's Motion for Partial Summary Judgment, pp. 3-6, ¶¶ 1-7; Trilogy's Reply in Support of Plaintiff's Motion for Partial Summary Judgment, Response to J.E. Dunn's Statement of Additional Uncontroverted Facts, ¶¶ 1-7.

## II. LEGAL ANALYSIS

---

[1] RSMo. Section 429.012.1 requires that: Every original contractor, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract. . . shall provide to the person with whom the contract is made or to the owner if there is no contract, prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when materials are delivered, (c) when work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure in ten-point bold type:
NOTICE TO OWNER
FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THE CONTRACT PURSUANT TO CHAPTER 429, RSMO.  TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT.  FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

### A. Standard for Summary Judgment

Federal Rule of Bankruptcy Procedure 7056(c), applying Federal Rule of Civil Procedure 56(c), provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970). Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial, and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  "A 'genuine issue' in the context of a motion for summary judgment is not simply a 'metaphysical doubt as to the material facts'." *Id*.  Rather, "a genuine issue exists when the evidence is such that a reasonable fact finder could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994).  When reviewing the record for summary judgment, the court is required to draw all reasonable inferences in favor of the non-movant; however, the court is "not required to draw every conceivable inference from the record-only those inferences that are reasonable." *Bank Leumi Le-isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).  With respect to the issue before the Court, there appears to be no factual dispute at all, whether as to a material issue or otherwise.

### B. Summary Judgment is Not Proper as to J.E. Dunn

Just as in an action brought under diversity jurisdiction, the doctrine of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), governs the Court's application of

state law. *See F.D.I.C. v. Wabick,* 335 F.3d 620, 625 (7th Cir. 2003). Under the Erie doctrine, a federal court is bound by the decisions of the state's highest court. *See Bass v. General Motors Corp.,* 150 F.3d 842, 846-47 (8th Cir. 1998); *HOK Sport, Inc. v. FC Des Moines*, L.C., 495 F.3d 927, 934-35 (8th Cir. 2007). However, if the state's highest court has not clearly spoken, the Court may rely on the decisions of intermediate state courts, unless convinced by persuasive data that the highest state court would decide the issue differently. *United Fire & Cas. Ins. Co. v. Garvey,* 328 F.3d 411, 413 (8th Cir. 2003) (*citing Comm'r v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967)). In attempting to predict state law, a federal court may "consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data...." *Leonard v. Dorsey & Whitney LLP*, 553 F.3d 609, 612 (8th Cir. 2009) (citing *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3d Cir. 1980)). The Court's duty is to conscientiously ascertain and apply state law, not to formulate new law based on its own notions of what is the better rule. *See David v. Tanksley,* 218 F.3d 928, 930 (8th Cir. 2000); *McKenna,* 622 F.2d at 663.

The issue is whether Missouri law requires strict compliance with the mechanics' lien statute or whether substantial compliance, as espoused in the case of *Overberg Decorating Center, Inc. v. Selbah Properties*, 741 S.W.2d 879 (Mo. Ct. App. 1987), satisfies the requisite notice. Debtor claims that in *Gauzy Excavating and Grading Co. v. Kersten Homes, Inc.*, 934 S.W.2d 303 (Mo. banc 1996), the Missouri Supreme Court affirmed Missouri precedent requiring strict compliance with the mechanics' lien notice statute and noted that the "bright-line rule mandated by the statute gives the best guidance to owners and contractors alike." *Guazy*, 934 S.W.2d at 305-06. Debtor argues that the court expressly rejected substantial compliance with the language contained in § 429.012.1. Indeed, the *Gauzy* court held that the mechanic's

lien was invalid because the contractor did not strictly comply with the statutory notice language. However, as discussed below, the court distinguished *Gauzy* and *Overberg* on their facts and most importantly, noted that the parties in *Gauzy* had merely an oral agreement, not a contract that substantially complied with the notice language as in *Overberg*.

Debtor also cites several Missouri Courts of Appeal cases that it claims have enforced the strict compliance requirement and acknowledged a bright-line rule. *See, e.g., MECO Systems, Inc. v. Dancing Bear Entertainment, Inc.*, 42 S.W.3d 794 (Mo. Ct. App. 2001); *Bledsoe Plumbing and Heating, Inc. v. Brown*, 66 S.W.3d 169 (Mo. Ct. App. 2002); *Landmark Sysems, Inc. v. Delmar Redevelopment Corp.*, 900 S.W.2d 258 (Mo. Ct. App. 1995); *Morgan Wightman Supply Co. v. Smith*, 764 S.W.2d 485 (Mo. Ct. App. 1989). However, also as discussed below, this Court believes that these cases also acknowledge the substantial compliance rule and do not reject its application in appropriate factual circumstances.

On the other hand, Dunn relies on *Overberg* for the proposition that substantial compliance with the language of the statute satisfies its requirements. In *Overberg*, the court determined that the language contained in the contract between the parties, while not in strict compliance with the statutory requirements, substantially complied with the statute and went even further by providing the owner with protection from hidden liens. *Overberg*, 741 S.W.2d at 881. The court also noted that the developer provided the contract and was knowledgeable regarding mechanics' liens and that the legislature did not intend to protect such defendants in enacting the statute. However, it limited its holding to the particular circumstances of the *Overberg* case. *See id.*

Debtor argues that this Court is bound by the Missouri Supreme Court decision of *Gauzy* because it was decided after *Overberg* and, Debtor contends, the court expressly declined to

adopt a substantial compliance exception. It also contends that this Court cannot rely on an appeals court decision that is inconsistent with *Gauzy* because the Missouri Supreme Court has addressed the same issue. *See* Debtor's Reply in Support of Summary Judgment, pp. 6-7.

First, this Court acknowledges that it is of course bound by Missouri state court law and must follow the state's highest court if it has clearly spoken. However, if the state supreme court is unclear or ambiguous on the issue, this Court may rely on intermediate court decisions to assist in determining what the state's highest court would decide. Here, Debtor claims that the supreme court expressly rejected substantial compliance in the context of statutory notice of a mechanic's lien in *Gauzy* and it is therefore clear that the state's highest court would require strict compliance with the notice statute. However, this Court disagrees. Instead, it appears that the Missouri supreme court clearly declined to rule definitively on "the general propriety of the substantial compliance exception announced in *Overberg*" and went on to distinguish *Gauzy* and *Overberg* on their facts. *See Gauzy*, 934 S.W.2d at 305. Specifically, as the court noted, *Overberg* involved a written contract between the contractor and the owner which contained language substantially equivalent to the statutory notice. *Id.* at 306. In contrast, the parties in *Gauzy* had merely an oral agreement and no evidence was introduced that the oral agreement set out the notice requirement in terms substantially equivalent to those used in the statute. *Id.* The court appeared more concerned about limiting the holding in *Overberg* to its context[2] than it did about acknowledging the substantial compliance doctrine.

As the Debtor pointed out, the *Gauzy* court did state that it declined to extend *Overberg* because "[t]o do so would run contrary to the longstanding precedent requiring strict compliance

---

[2]The court noted that *Overberg* does not establish that the statute may be satisfied if someone other than the contractor provides the notice to the owner or if the owner has independent knowledge of the mechanics' lien law. Additionally, the Court observed that *Overberg* does not hold that furnishing of lien waivers demonstrates substantial compliance. Those situations were not before the court in *Gauzy*; nor are they before the Court here.

with the statute" and cited two cases as evidence of that "longstanding precedent." 934 S.W.2d at 305. However, in this Court's view, the two cases cited for this proposition do not clearly reject substantial compliance with the statutory language and appear to even accept that doctrine. In *Landmark Systems, Inc. v. Delmar Redevelopment Corp.*, 900 S.W.2d 258 (Mo. Ct. App. 1995), the court discussed *Overberg* and noted that notice substantially equivalent to the statutory language was given in that case and that was the basis of the decision. In the case before it, Landmark did not even contend that it substantially complied with the mandated statutory language. Further, the court stated that "allowing a lien where there was not *substantial compliance* with the notice provision contained in § 429.012 would add another issue to each mechanic's lien case, namely the extent of the property owner's knowledge of the mechanic's lien laws." *Landmark*, 900 S.W.2d at 262-63 (emphasis added).

The other case cited by the *Gauzy* court to support the longstanding precedent requiring strict compliance, *White River Development Co. v. Meco Systems, Inc.*, 806 S.W.2d 735 (Mo. Ct. App. 1991), also involved a party that did not provide any type of notice regarding the mechanic's lien. That court similarly distinguished *Overberg* on that basis and made the same observation about the absence of at least *substantial compliance* with the notice provision contained in § 429.012. *White River Development*, 806 S.W.2d at 738. These cases that the supreme court cited appear to accept the substantial compliance argument as it relates to the specific statutory language, and only reject exceptions to the statute based solely on knowledge and sophistication of a property owner.[3]

---

[3]Likewise, in *Morgan Wightman Supply Co. v. Smith*, 764 S.W. 2d 485 (Mo. Ct. App. 1989), cited by Trilogy, while the court held that a supplier's failure to provide property owners with notice regarding lien waivers by subcontractors rendered the lien invalid, it nonetheless acknowledged the concept of substantial compliance. Specifically, the court acknowledged the rule that mechanics' lien statutes are remedial in nature and should be construed in favor of lien claimants but noted that "this rule of construction does not relieve a lien claimant from reasonably and *substantially* complying with the statutory requirements. *Id.* at 493. (emphasis added).

Debtor also relies on the language contained in *Gauzy* that "[t]he bright-line rule mandated by the statute gives the best guidance to owners and contractors alike." 934 S.W.2d at 306. But this remark was made in the context of the court wanting to avoid adding a layer of analysis regarding the property owner's knowledge of the mechanics' lien laws and sophistication in that area.[4] Here, as in *Overberg*, the court need only compare the language contained in the parties' contract with the statutory notice language to determine if it is in substantial compliance with such notice provision, a simple objective inquiry.

In the most recent case decided after *Gauzy* and *Overberg*, and in discussing both of those cases, the court of appeals noted that while Missouri courts have typically required strict compliance with the mechanics' lien notice provision and been reluctant to allow exceptions other than those provided for under the statute, they have found substantial compliance with the statute where the facts so required. *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 713 (Mo. Ct. App. 2002). In that case, the court determined that unlike in *Gauzy* where no notice was given, but similarly to *Overberg*, the notice given by appellant contractor substantially complied with the requirements of § 429.012.1. *Id.* at 715.

Interestingly, while there is much language in the Missouri cases regarding strict compliance with the mechanics' lien statutes, there are also numerous expressions to the effect that the mechanics' lien laws are remedial in nature and should be liberally construed for the benefit of lien claimants. *See, e.g., BCI Corp. v. Charlebois Const. Co.*, 673 S.W.2d 774, 780

---

[4]Even the court which authored the opinion in *Overberg* has rejected the notion that the knowledge or sophistication of the property owner constitutes grounds for deviating from the statutory scheme. *See White River Development Co. v. Meco Systems, Inc.*, 806 S.W.2d 735, 738 (Mo. Ct. App. 1991) ("the statute does not limit the necessity of this notice to those experienced with, or having lack of knowledge about, the mechanics' lien laws."); *see also Landmark Systems, Inc. v. Delmar Redevelopment Corp.*, 900 S.W.2d 258, 261 (Mo. Ct. App. 1995) (court's observation in *Overberg* of owner's extensive involvement in real estate was not dispositive, but merely "further support" for holding; also notes that statute does not limit requirement of notice to those inexperienced with or having no knowledge of mechanics' lien laws, citing *White River*).

(Mo. 1984); *Mitchell Engineering Co. v. Summit Realty Co., Inc.*, 647 S.W.2d 130, 135 (Mo. 1982); *Farmington Bldg. Supply Co. v. L.D. Pyatt Const. Co.*, 627 S.W.2d 648, 650 (Mo. Ct. App. 1981); *Putnam v. Heathman*, 367 S.W.2d 823, 828 (Mo. Ct. App. 1963); *Wadsworth Homes, Inc. v. Woodridge Corporation*, 358 S.W.2d 288, 291 (Mo. Ct. App. 1962). While each of these courts acknowledges that, notwithstanding the policy of liberal construction, a lien claimant must comply with the provisions of the statute, it describes that requirement as being one of *reasonable* and *substantial* compliance. *Mitchell Engineering*, 647 S.W.2d at 135; *Farmington Building Supply*, 627 S.W.2d at 650; *Putnam*, 367 S.W.2d at 828, *Wadsworth Homes*, 358 S.W.2d at 291. As a matter of fact, the concept of substantial compliance has a long pedigree in the Missouri cases dating back as least as far as 1870. In the case of *Putnam v. Ross*, 46 Mo. 337 (1870), the Supreme Court said the following in commenting on the purpose of the mechanics' lien laws and the way in which they should be construed:

> The defendants' view seems to be founded upon the theory that the mechanics' lien enactment is in derogation of the common law, and that its provisions are therefore to be construed with a rigid strictness against those who seek to avail themselves of its intended benefits. There may be decisions which lend support to that theory, but the better opinion is that the provisions of the mechanics' lien law should be interpreted so as to carry out the object had in view by the legislature in enacting it, namely: the security of the classes of persons named in the act, upon its provisions being in good faith *substantially* complied with on their part (emphasis added).

Given the principles announced in these longstanding precedents, the Court concludes that its rejection of the assertion by plaintiff that Dunn's lien should be determined invalid by reason of its failure to strictly comply with the mechanics' lien statute is in accordance with Missouri law.

It appears to this Court that nearly all of the Missouri state court cases cited by both Debtor and Dunn acknowledge, and in several instances apply, the notion of substantial compliance with the statutory notice language and that none of them, including the Missouri

Supreme Court in *Gauzy*, has explicitly rejected the doctrine. It is in no way clear to this Court that Missouri's highest court would require absolute strict compliance with the statutory language set forth in § 429.012.1. The Court is therefore unable to find as a matter of law that Dunn does not have a valid mechanic's lien against property of the bankruptcy estate and that the claim of Dunn against the estate is unsecured.

### III. CONCLUSION AND ORDER

For the reasons stated above, Trilogy's Motion for Partial Summary Judgment is hereby denied. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

ENTERED this 5th day of October 2010.

/s/ Dennis R. Dow

United States Bankruptcy Judge

Copies to:

Jonathan A. Margolies, John J. Cruciani, Robert M. Pitkin

All interested parties